STATE OF OKLAHOMA } S.S.
CLEVELAND COUNTY }
FILED
MAY 21 2026
In the office of the
Court Clerk MARILYN WILLIAMS

**IN THE DISTRICT COURT OF CLEVELAND COUNTY**
**STATE OF OKLAHOMA**

| | |
|---|---|
| **NINA "JAMES" DERKS, AVA HICKS, KAEDENCE LeFAY, RILEY ROBINSON, HAILEY "ATLAS" RUOFF, AND LUCY WESTEMEYER,** | |
| **Plaintiffs,** | |
| **vs.** | **CASE NO.: CJ-2026-** 824 |
| **THE BOARD OF REGENTS OF THE UNIVERSITY OF OKLAHOMA,** | |
| **Defendant.** | |

## PETITION FOR RELIEF

Plaintiffs, Nina "James" Derks, Ava Hicks, Kaedence LeFay, Riley Robinson, Hailey "Atlas" Ruoff, and Lucy Westemeyer, by and through their attorney, Dustin J. Hopson, come now to assert the following claims stated herein against Defendant, the Board of Regents of the University of Oklahoma. In support of their claims, Plaintiffs state as follows:

## THE PARTIES

1. Plaintiff, Nina "James" Derks, native of Allen, Texas, at all relevant times was domiciled in Norman, Cleveland County, Oklahoma, and enrolled as a student of the University of Oklahoma and resided in the dorms at its campus in Norman, Oklahoma.

2. Plaintiff, Ava Hicks, native of Midwest City, Oklahoma, at all relevant times was domiciled in Norman, Cleveland County, Oklahoma, and enrolled as a student of the University of Oklahoma and resided in the dorms at its campus in Norman, Oklahoma.

3. Plaintiff, Kaedence LeFay, native of Claremore, Oklahoma at all relevant times was domiciled in Norman, Cleveland County, Oklahoma, and enrolled as a student

of the University of Oklahoma and resided in the dorms at its campus in Norman, Oklahoma.

4. Plaintiff, Riley Robinson, native of Norman, Oklahoma, at all relevant times was domiciled in Norman, Cleveland County, Oklahoma, and enrolled as a student of the University of Oklahoma and resided in the dorms at its campus in Norman, Oklahoma.

5. Plaintiff, Hailey "Atlas" Ruoff, native of Guthrie and Oklahoma, at all relevant times was domiciled in Norman, Cleveland County, Oklahoma, and enrolled as a student of the University of Oklahoma and resided in the dorms at its campus in Norman, Oklahoma.

6. Plaintiff, Lucy Westemeyer, native of Iowa City, Iowa, at all relevant times was domiciled in Norman, Cleveland County, Oklahoma, and enrolled as a student of the University of Oklahoma and resided in the dorms at its campus in Norman, Oklahoma.

7. At all pertinent times, each Plaintiff was associated with the University of Oklahoma as a student seeking to undertake and participate in an educational program or activity.

8. Defendant, the Board of Regents of Oklahoma, is the legal entity responsible for the maintenance and administration of the University of Oklahoma, a public University with its principal campus located in Norman, Oklahoma. See, 70 O.S. § 3305.

9. In addition, Defendant, the Board of Regents of the University of Oklahoma, as well as the University of Oklahoma itself, receives federal funding for purposes of its operations.

10. As a publicly funded University that receives public federal funds, Defendant is subject to the provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq, herein referred to as "Title IX."

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action pursuant to 12 O.S. § 2004, as this is a civil action arising under the laws of the State of Oklahoma. Plaintiff asserts state tort claims arising under the Oklahoma Governmental Tort Claims Act, 51 O.S. §§ 151 et seq., as well as claims arising under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 et seq. This Court has concurrent jurisdiction over Plaintiff's federal claims, as Oklahoma state courts possess jurisdiction to hear claims arising under federal law. The Board of Regents of the University of Oklahoma is a public body created by and operating under the laws of the State of Oklahoma, subject to suit in this Court.

12. Plaintiffs have complied with the notice requirements of the Oklahoma Governmental Tort Claims Act, 51 O.S. § 156, by providing written notice of the claim to the Board of Regents of the University of Oklahoma within one year of the date of loss, and the statutory period for approval or denial of said claim has elapsed.

13. Venue is proper in the District Court of Cleveland County, Oklahoma, pursuant to Okla. Stat. tit. 12, § 134, as the Board of Regents of the University of Oklahoma maintains its principal place of business in Cleveland County, Oklahoma, and the acts and omissions giving rise to Plaintiffs' claims occurred in Cleveland County, Oklahoma.

14. Should this action be removed to federal court, Plaintiff asserts that jurisdiction would be proper in the United States District Court for the Western District of

Oklahoma pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction over Plaintiff's state law claims), and that venue would remain proper pursuant to 28 U.S.C. § 1391(b), as Defendant is located within that District and the events giving rise to this action occurred therein.

**NOTICE OF INTENT TO FILE TORT CLAIMS**
**AGAINST THE STATE OF OKLAHOMA**

15. Plaintiffs timely served their notice of claim on the Office of the Risk Management Administrator via certified mail on August 29, 2025, in compliance with 51 O.S. § 156(B) of the Governmental Tort Claims Act. Ensuing correspondence from the State of Oklahoma designated the effective date of the notice of claim to be August 29, 2025.

16. More than ninety 90 days have passed since the effective date of presentment without approval of the claim in its entirety, and the claim was therefore deemed denied pursuant to 51 O.S § 157 November 25, 2025. This action is commenced within one hundred eighty (180) days after denial, as required by 51 O.S. § 167 (B).

**STATEMENT OF THE CASE**

17. This is an action the University of Oklahoma, arising out of its negligent failure to contain and remediate a known and dangerous bedbug infestation in University housing, and out of its further negligent conduct in carrying out repeated chemical treatment and related remediation in a manner that did not reasonably protect the students living there. Defendant had actual and/or constructive notice that a bedbug infestation had spread beyond one room and was affecting multiple rooms on the same hallway. Defendant failed to take reasonable steps, or act within the duty of care to

investigate adjacent rooms, maintain effective monitoring, eradicate pests, prevent further spread, provide meaningful warning, protect student health, safety, and property, and/or adopt and communicate a coherent and reasonably safe remediation protocol.

18. As a direct result of Defendant's acts and omissions described herein, Plaintiffs suffered a litany of harms, including but not limited to, the following:

a. economic loss associate with repeated laundering, rewashing, packing, and unpacking of clothing, bedding, and personal belongings;

b. physical displacement from their rooms, requirements to move sleeping quarters and arrangements, and disruption of their ordinary use and enjoyment of University housing;

c. out-of-pocket expense associated with laundry machine costs, laundry supplies, replacement of bedding items, and other infestation and remediation-related costs;

d. repeated contamination of bedding and personal property by pesticides and other remediation activity;

e. damage to or loss of personal property during Defendant's repeated treatment and entry into student rooms;

f. physical illness and bodily symptoms associated with the infestation and/or the manner of Defendant's chemical remediation, including bug bites, coughing, headaches, hives, nausea, vomiting, weakness, exhaustion, depression, isolation, and other related symptoms;

g. physical and emotional distress, anxiety, and other mental suffering associated with living through a prolonged infestation and repeated unsafe remediation efforts; and

h. actual harm and damages associated with loss of academic opportunity, including missed classes, lost study time, requirement for extensions, reduced academic performance, and related disruption to the students' educational pursuits, which has caused, and will cause ongoing damages.

**ASSERTION OF FACTS**

19. Defendant, through its employees and agents, owned, operated, managed, supervised, and controlled the University housing at issue, including the residence hall and hallway in which Plaintiffs resided during the Spring 2025 semester.

20. Plaintiffs were student residents lawfully occupying rooms in that residence hall and were entitled to use and enjoy their dormitory rooms and common areas in a reasonably safe, sanitary, and habitable condition.

21. Beginning on or about January 4th, 2025, bedbug activity was reported in rooms 302 and 303 on Plaintiffs' hallway.

22. On or about January 4, 2025, University personnel were notified that bedbugs had been found in room 303.

23. After these reports, on or about January 6, 2025the University undertook chemical treatment in only room 303, and did not undertake preventative care to retard and/or prevent further infestation or provide appropriate notice to students associated with risks of such further infestation and/or chemical use.

24. After January 6, 2025, bedbug activity and/or infestation continued, and on February 8, 2025, bedbugs were again identified and reported in the subject dormitory hallway.

25. Following the February 8, 2025 reports of bedbugs, Defendant again failed to undertake proper and/or appropriate treatment for bedbugs that was consistent with the standard of care for such infestations and/or reports of infestation, by failing to appropriately treat bedbugs in and/or around the locations where bedbugs were reported, and applying additional chemical treatment in only room 303.

26. Despite the recurrence of bedbug activity in January and February of 2025, Defendant failed to undertake reasonable care to contain a bedbug infestation, prevent spread of the infestation, follow the advice of licensed professionals, and/or implement any adequate, or even competent, response to prevent or address the spread of bedbugs on the subject hallway or throughout the entire dormitory.

27. By February 2025 and continuing into March 2025, student residents, including but not limited to Plaintiffs, were already experiencing disruption to their living conditions, including repeated laundering, packing and unpacking of belongings, sleeping elsewhere, and distress associated with the continuing infestation.

28. By March 10, 2025, the bedbug infestation had expanded throughout the dormitory hallway, beyond rooms 302 and 303.

29. On or about March 10, 2025, bedbugs were once again reported in multiple rooms on the same hallway, including rooms 303, 307, 308, and 309. Later that same day, room 302 was also reported as being afflicted with bedbugs, and it was described as a particularly severe case.

30. Prior to March 10, 2025, Defendant had actual notice that bedbug activity was affecting multiple nearby rooms on the same hallway and was no longer confined to a single room.

31. Defendant undertook spot treatments using chemical sprays on March 11, March 17, and March 26, 2025. However, on information and belief, such chemical treatments were not proper for bedbugs and/or violated the proper standard of care.

32. Plaintiffs were not given appropriate or proper notice for chemical treatments on March 11, March 17, and March 26, 2025, or for any other treatment.

33. In addition, Defendant's agents, employees, and/or contractors associated with these chemical treatments entered the private domain of Plaintiffs by entering in their rooms unannounced and/or during spring break, when students were not present, thereby violating Plaintiffs' sense of security and contributing to emotional distress.

34. Upon return from spring break, Plaintiffs were subject to sleeping and/or living in environments that had been chemically sprayed, torn asunder, and without notice to clean their bedsheets, clothing, items within their room, and on the dormitory hallway, subjecting them to exposure to chemicals that caused irritation and/or medical conditions that required treatment and resulted in severe discomfort.

35. Defendant's failure to give appropriate notice to the student Plaintiffs and others contributed to damage to property and exposure to the students that caused actual harm, for which they are entitled to recover.

36. Upon learning of the improper and unnoticed treatments, Plaintiffs were required to use resources and money, as well as valuable academic study time, to bag,

clean, launder, rewash, and otherwise manage large volumes of clothing, bedding, and personal belongings.

37. Defendant failed to provide an adequate protocol, sufficient logistical support, or enough immediate access to the resources needed to safely and effectively remedy Plaintiffs' living circumstances and environment or to reduce or eliminate exposure to chemical treatments in the rooms on the hallway.

38. Students and parents communicated with Defendant's housing personnel and urged Defendant to take reasonable preventive and investigative efforts, including checking nearby rooms, maintaining or setting bedbug traps or monitors, and considering alternatives to repeated chemical spraying.

39. Plaintiffs and/or their parents specifically raised concerns to Defendant that bedbugs could spread between nearby rooms and that the University's response was too narrow, too delayed, and too dependent on waiting for individual students to identify and report infestation evidence on their own.

40. Throughout the spring 2025 semester, Plaintiffs and their parents on their behalf repeatedly requested more laundry access, laundry assistance, clearer instructions, bedbug traps or monitors, emergency housing, and broader preventive measures, but Defendant's response remained inconsistent, delayed, and inadequate.

41. Upon information and belief, Defendant's agents and employees nevertheless declined to conduct broader preventive room checks and declined to properly and/or effectively inspect for and/or treat bedbugs, even though multiple rooms on the hallway had already been affected.

42. Defendant's agents and employees further failed to abide by any standard of reasonable care by prematurely removing bedbug monitoring, and they did so over the objections of Plaintiffs. This action extended and failed to properly or adequately address the ongoing infestation.

43. Defendant's agents and employees failed to follow industry standards and the advice of professionals.

44. Defendant's agents and employees failed to follow instructions for us on the chemicals used in Plaintiffs' dormitories.

45. Plaintiffs continued to observe and experience an ongoing bedbug infestation throughout the dormitory hallway over the last two weeks of March, 2025.

46. In addition to failing to address the subject bedbug infestation, Defendant accused Plaintiffs and other residents of being responsible for reporting introducing bedbugs to the hallway, and/or failing to report bedbugs and/or bedbug infestations promptly.

47. The facts presently available support the conclusion that Defendant had actual notice, no later than early March 2025 and likely earlier, that bedbugs had been repeatedly reported in multiple nearby rooms on the same hallway.

48. The facts presently available further support the conclusion that Defendant failed to take reasonable steps to investigate nearby rooms, maintain effective monitoring, and prevent spread.

49. As a direct and proximate result of those acts and omissions, Plaintiffs suffered infestation-related harms, including illness and health related effects, repeated laundering, packing and unpacking of belongings, sleeping elsewhere, distress

associated with the continuing infestation, out-of-pocket expenses, displacement, and related academic disruption.

50. The infestation and Defendant's response also caused concrete academic harm. Plaintiffs missed classes, arrived to class late, lost significant study time, were forced to beg for assignment extensions, tried to obtain excused absences because of exhaustion or illness, and suffered lower grades, all which they attribute to the bedbug infestation and Defendant's ineffective and inappropriate response to the infestation.

51. During its treatment efforts to address the bedbug infestation, Plaintiffs were informed of other bug infestations in male dorms and/or athletic dorms which were handled differently, with more attention, focus, and care, than Plaintiffs' dormitory, an all-female dormitory, received.

52. On information and belief, Plaintiffs, because their sex is female and they live in the female dorm, were treated unequally in similar circumstances than males living in the male dorm. However, because of scrutiny associated with the subject infestation, Defendant would not produce information regarding other such treatments or infestation responses.

53. Plaintiffs and/or their parents on their behalf sent detailed written complaints to the University of Oklahoma housing department on or about March 25 and March 26, 2025, in which they complained that Defendant's infestation response was insufficient, not proactive, lacked any coherent student-protective protocol, and resulted in the burden of eliminating bedbugs being shifted onto Plaintiffs and other students.

54. On or about March 25-26, 2025, University agents and employees acknowledged and admitted to the failure of the response to the bedbug reports and

infestation, and they acknowledged the problem by stating that they would be "committed to learning from this experience" after failing to resolve the damges Plaintiffs were suffering.

55. On or about March 26, 2025, Plaintiffs, other students, and their families met with employees and/or agents of the University. During this meeting, Plaintiffs and others requested urgent assistance, including more washer and dryer access, more practical help with decontamination, and meaningful protection for the affected students.

56. Following the March 26, 2025 meeting, Defendant failed to adequately or properly respond to issues involving the bedbug infestation and effectively required Plaintiffs to manage the consequences of the infestation and repeated chemical treatment largely on their own.

57. On or about March 27, 2025, additional complaints were escalated to higher University officials, including Student Affairs and others, and the concerns were also copied to outside recipients.

58. University officials stopped working with Plaintiffs and cancelled a meeting that Defendant had scheduled to "address [Plaintiffs'] concerns."

59. Upon cancellation of the student-administration meeting at the end of March 2025, Plaintiffs continued to advance their concerns through additional channels, including contacting the Ombudsman, the President's office, and persons associated with the University's governing structure.

60. Upon information and belief, some students were treated differently with respect to relocation and assistance, and the University's messaging about who would

be moved, when they would be moved, and under what conditions was inconsistent and not consistent with any standard of reasonable care.

## FIRST CLAIM FOR RELIEF AND REQUEST FOR DAMAGES

61. Plaintiffs hereby incorporate the prior paragraphs as if fully stated herein.

62. At all times, Defendant had a duty to maintain and provide a habitable housing environment for Plaintiffs and other residents in the subject dormitory.

63. Defendants failed to exercise reasonable care in the inspection of the dormitory to ensure safety and habitability in the subject dormitory.

64. Defendants actions and inaction breached the duty it owed to Plaintiffs by failing to use reasonable care in the assessment, inspection, and treatment of bedbugs in the subject dormitory, failing to adhere to appropriate policies associated with identification and treatment of infestations, specifically but not limited to bedbug infestations, failing to follow the advice of professionals, failing to use the chemicals according to their instructions, and repeatedly failing to administer treatment for bedbugs consistent with the standard of care for University dormitories and/or the industry and/or community standard for treatment of bedbugs.

65. Defendant further breached its duty of care associated with undertaking efforts to notify residents of bedbug infestations and/or trying to prevent the spread of bedbugs throughout the subject dormitory.

66. The facts presently available support the conclusion that Defendant failed to provide timely and adequate warning, adopt and communicate a coherent protocol, protect student property, and carry out chemical remediation in a reasonably safe manner consistent with Defendant's duty of care.

67. As a direct and proximate result of those acts and omissions, Plaintiffs suffered physical illness associated with Defendant's remediation efforts, property damage and contamination, out-of-pocket expense, displacement, and academic harm.

68. Defendant was negligent in the way it attempted to remediate the infestation when it did not provide meaningful notice to Plaintiffs that their persons and property would come into contact with the pesticides it and its agents sprayed in Plaintiffs' dormitories.

69. Defendant was further negligent in failing to have an applicable protocol, communicate any adequate protocol, and protect students in the care of their housing department.

70. Defendant's negligent acts and omissions have injured the health of Plaintiffs in the manners and ways described herein and caused economic and emotional distress damages, for which Plaintiffs are entitled to recover.

71. The negligent acts and omissions of Defendant are the direct and proximate cause of damages to Plaintiffs, including but not limited to actual damages, economic damages, and emotional distress for which Plaintiffs are entitled to recover.

**WHEREFORE**, Plaintiffs pray for judgment in excess of $75,000 in their favor as to their claim of negligence, together with an award of all reasonable and appropriate damages to which they are entitled, as well as an award of their reasonable costs and attorney's fees.

**SECOND CLAIM FOR RELIEF**
**(Title IX Discrimination on the Basis of Sex)**

72. Plaintiffs hereby incorporate the prior paragraphs as if fully stated herein.

73. Defendant is a publicly-funded University that receives federal funds, and therefore is subject to the requirements and provisions of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681, et seq.

74. At all pertinent times, Plaintiffs were students engaged in an educational activity or program.

75. Plaintiffs' sex is female who at all pertinent times resided in a female dormitory of University housing.

76. Defendant's actions constitute discrimination on the basis of sex toward Plaintiffs.

77. The actions of Defendant in discriminating against Plaintiffs resulted in and/or caused the exclusion from participation in an educational activity or program, including but not limited to student housing opportunities, academic opportunities, and a proper college educational experience. Further, Defendant's actions deprived Plaintiffs of the benefits of such educational activity or program and resulted in damages for which Plaintiffs are entitled to recover.

78. At all times, Defendant had actual knowledge of its discriminatory actions, and Defendant was deliberately indifferent to the rights of Plaintiffs under Title IX.

79. Defendant's actions, for reasons set forth above, constitute a violation of Title IX.

80. As a result of Defendant's actions in violation of Title IX, plaintiffs suffered actual harm and/or damages, for which they are entitled to recover.

81. Plaintiffs are entitled to recover compensatory damages including medical expenses, compensation for damage to property and/or replacement costs, replacement

costs, damages for lost academic opportunity and/or tuition replacement, pain and suffering, and emotional distress, as well as declaratory relief finding Defendant violated Title IX, injunctive relief requiring Defendant to adopt and incorporate non-discriminatory protocols for such circumstances in the future.

82. Plaintiffs are further entitled to an award of costs and attorney fees pursuant to 42 U.S.C. §1988 as further compensation for finding in their favor as to their Title IX claim.

**WHEREFORE**, Plaintiffs pray for judgment in excess of $75,000 in their favor as to their Title IX claim, together with an award of all reasonable and appropriate damages to which they are entitled as set forth above, as well as an award of their reasonable costs and attorney's fees.

## THIRD CLAIM FOR RELIEF
## (Invasion of Privacy)

83. Plaintiffs hereby incorporate the prior paragraphs as if fully stated herein.

84. Plaintiffs have a reasonable expectation of privacy in their dormitory rooms.

85. Plaintiffs have a reasonable expectation that no one will enter their dormitory rooms without their knowledge, absent an emergency.

86. Plaintiffs have a reasonable expectation that if University employees or agents enter Plaintiffs' rooms in their absence, the University will advise Plaintiffs of when and why someone was in their rooms.

87. Defendant has a duty to protect Plaintiffs' privacy expectations, particularly as they relate to employees, agents, and contractors.

88. Defendant failed in its duty by allowing University employees, agents, and contractors to enter Plaintiffs' rooms during Spring Break 2025 and on other occasions without their knowledge or consent.

89. Defendant failed in its duty by failing to ensure Plaintiffs knew Defendant allowed employees, agents, and contractors enter their dormitory rooms without their knowledge or consent.

90. The intrusion by Defendant's employees, agents, and contractors would be highly offensive to a reasonable person.

91. The intrusion by Defendant's employees, agents, and contractors was highly offensive to Plaintiffs.

92. Defendant knew or should have known that its intrusion would be highly offensive to a reasonable person.

93. Defendant knew or should have known that its intrusion was highly offensive to Plaintiffs.

94. Plaintiffs were harmed by Defendant's invasion of privacy.

95. Plaintiffs suffered mental anguish and suffering by Defendant's invasion of privacy.

**WHEREFORE**, Plaintiffs pray for judgment in excess of $75,000 in their favor as to their invasion of privacy claim, together with an award of all reasonable and appropriate damages to which they are entitled as set forth above, as well as an award of their reasonable costs and attorney's fees.

Respectfully submitted,

Dustin J. Hopson, OBA #19485
Amy S. Neathery, OBA #20344
Hopson Legal, LLC
210 Park Avenue, Suite 1810
Oklahoma City, OK 73102
Telephone: (405) 673-7560
Email: dustin@hopsonlawfirm.com
Email: amy@hopsonlawfirm.com